May it please the Court, Christian Hokens on behalf of the appellant, Michael Davitt. This case is about the limits on government officials in evicting people from their homes. The Super 8 hotel in this case was Mr. Davitt's home. He had lived there for over two months as his sole residence with all of his belongings, and the rent was paid on a weekly or biweekly basis by the Public Housing Authority in Olmstead County. It was only over a month after he had lived in that hotel that the Public Housing Authority, not the landlord, the hotel, asked him to sign an agreement for a hotel guest. We are asking you to reverse the District Court's grant of summary judgment for three reasons. First, the District Court erred in finding that it was unclear whether Mr. Davitt was a hotel guest or a tenant under Minnesota law. He was a tenant, and it was a violation of his Fourth Amendment rights to remove him from that hotel without due process. Second, on the due process point, Mr. Davitt was entitled to a pre-deprivation due process in this case. In the form of an eviction hearing, whether or not the eviction court ultimately determined that he was a tenant or not, he was entitled to that hearing in this case. And third, because these rights were clearly established under the Fourth and the Fourteenth Amendment, the appellees are not entitled to qualified immunity. Turning to the first issue, the Fourth Amendment violation, the Supreme Court established in Soledad that it is a violation of a person's Fourth Amendment property interests whenever a government agent actively participates in an eviction. And second, those property interests under the Fourth Amendment are a creature of state law. They are created in this case by Minnesota law. And so to look at those property rights and figure out what they are, we look at Minnesota law. And in particular, we have two statutes that are highly relevant and a multi-factor test that, as a matter of landlord-tenant law, is commonplace. Those statutes are the hotel statute cited, 32770, which creates a rebuttable presumption in this case that Mr. Davitt was a tenant, because it states that if the hotel is that person's sole residence, then there's a rebuttable presumption that they're not a guest, the alternative being that they are a tenant. Well, let me ask you this. As I understand the argument, it's clearly established that if he's a tenant, he has certain due process rights before he's evicted. I think that's part of the argument. Correct. And but the question then becomes, is he a tenant? And let's assume there is a legitimate, that's not clearly established, and you can sit here all day debating it under these particular facts. Let's assume that it's a, that's a very unclear question and that cannot be answered as, quite as easily as you think it may be answered. Where does that leave us? That's reasonable minds can differ as to whether he was a tenant or just a hotel occupant under the multi-factor test. Your Honor, that still leaves you with a due process violation under the 14th Amendment. Because if you look at the line of cases from Fuentes on down, it states that when someone has an important possessory interest in property, then they are entitled to pre-deprivation due process. Do you need for us to basically toss the April 28th agreement, though, to get there? Because the April 28th agreement seems to set forth a week-to-week tenancy, terminable on one week notice, and so that even if you had some property interest, if it's governed by the April 28th agreement, then the notice given was likely sufficient. And that alone doesn't bring into play the eviction statutes unless you can prove the existence of an actual tenancy. Your Honor, respectfully, I disagree that it doesn't bring in the landlord-tenant law even if proper notice is given. Even if proper notice is given to a tenant at will, which is what Mr. Davitt was here, and he refuses to leave after that notice is given, he just becomes a holdover tenant, which is still a tenant under Minnesota law. But he has no agreement, actually, with the hotel, and there's no agreement that indicates that the personal defendants here that are sued in their individual capacity, that they had ownership or control of the hotel. Certainly, but in the ZJ v. Kansas City Board of Police case, this Court said that what's needed is a causal connection, and the causal connection here is not tenuous between the appellee's guidance that they gave to the police and the unlawful eviction of Mr. Davitt. It is the proximate cause, and you can see that on the body camera footage in this case, Officer Mangan's footage. In the first few minutes, we see a conversation play out between the hotel management and the officers, and Officer Mangan says, we had to check with the appellees in this case whether or not we could evict this guy, and they said that we could. And then the hotel manager says something to the effect of, yeah, I didn't know because there's an eviction ban, and I thought maybe I'd have to give him a notice to quit, which is 30 days, that kind of thing, which is the proper procedure in this case. He was a tenant at will that became a holdover tenant, a tenant nonetheless, and the Supreme Court said in Fuentes and in a variety of other cases cited in our briefing that when you have a possessory interest in property, and it's an important interest, and there is no interest more important than the interest in your home. You can look at Soldal and a variety of other cases. It's actually in the text of the Fourth Amendment. Why isn't he a transient occupant, which is also, it's in Subdivision 5 of the statute, where it says, what is the intention of the parties that the occupancy will be temporary? And it gets to Judge Erickson's question, which is, I don't see anything that suggests that this was meant to be permanent or lengthy. Well, Mr. Davitt certainly believed that it was meant to be lengthy, and even if you have an indefinite tenancy, it's still a tenancy at will until it's properly terminated through the court system using due process. Well, do you have anything in the record? I understand that he might have thought that, but is there anything in the record in terms of evidence that shows that it was not meant to be temporary, that this was meant to go on, you know, a long time or indefinitely? Nothing directly in the record, but I would respectfully state, Your Honor, that it's not relevant to the tenancy inquiry because this was his sole residence under the hotel statute, which creates a rebuttable presumption that he was not a transient occupant or a hotel guest. And so it's on the person trying to remove the person from the hotel to rebut that presumption, and that is not rebutted in this case because the variety of facts here establish that he was a tenant. We have a variety of hotel cases cited in our briefing, Gutierrez all the way back to the Fay Hotel case, that say just because someone's living in a hotel, it doesn't mean that they're a hotel guest.  And in particular— That's fair, but I want to challenge you on that because if it truly is week-to-week, I wonder, the closest analogy we could have is like an extended stay hotel maybe where you purchase a week and then you might purchase another week. But I don't think purchasing a week then allows you to stay for like six months and say, Nope, I'm a tenant. I was here for a week. It's my only residence. I'm homeless or whatever. I mean, that would be sort of an unworkable rule, I think. In 99% of hotel cases, and this comes up in my practice, it doesn't matter because they know that this person has another occupancy or they have no evidence to suggest that the hotel is their sole residence. All they have is someone who came in. Usually, I'd say in over 90% of cases, it's a night or two, and in most cases, it's a week or less. Like you say, there's no question in that case. This case is different because it was over two months. There was an eviction ban in place. He had all of his personal belongings there, and the public housing authority placed him there and was paying his rent on a week or every two-week basis. And you can see that in the payment records that are in the record here. Well, just to follow up on something Judge Strauss said, two things that Judge Strauss said. First of all, there is evidence in the record that he knew it wasn't permanent because they were working with him actively to find alternative placement, weren't they? That's true. So he knew they wanted him out of there as quick as possible and into a more permanent setting. But to follow up on what Judge Strauss said, you know, let's take the hypothetical, and I think this is not totally outside the realm of possibility. There's a lot of, for various reasons, there's a lot of discussion in our area about what are known as traveling nurses. They spend their whole life going from hospital to hospital on two- and three-month contracts, and they don't necessarily have a permanent residence or base, or if they do, it's with a sister or a mother or a dad or a cousin or something. And they go and they check into a hotel for two or three months because they got a contract with this hospital. So you're saying that person became a tenant. They are tenants, and if someone came to me, I would say that they would need to be evicted through proper due process because they may not have a sole residence. But when you've got a person living in a hotel for multiple months, then they are tenants. And I would argue that those traveling nurses are tenants, and if there is an eviction dispute that comes up, they are entitled to due process. Well, for qualified immunity purposes, though, what if we can say that that may be a good opinion, it may even be right, but reasonable minds may differ on that issue? Reasonable minds should not differ on the state law inquiry that informs the qualified immunity analysis. But on the qualified immunity, reasonable minds could differ. We have to look at what's clearly established, and the defendants are holding in their hands a piece of paper signed by the plaintiff that says, I understand that my hotel stay will be assessed weekly and extended by no more than one week at a time. And then the next bullet point is, I understand that the hotel management can ask me to leave at any time. And if that occurs, the Rochester Community Warming Center will be an option for me. And so they are holding in their hand a piece of paper that says, well, we can send them to the Rochester Warming House. They're holding in their hand a piece of paper that says, you can be asked to leave at any time. And they've had other options that they've given to the plaintiff, and he just says, I ain't going. Well, the reason that that doesn't matter is when it came to the door, he said, I would like to execute my eviction rights. And it's well established. How does that establish what they knew and that they were part of that group of people that are just all but the, I forget what the language is, but you just can't be merely negligent. You've got to be just sort of, you know, dreadfully incompetent, right, whatever the language is we use. I used to be a lawyer. So, Your Honor, so on that point, I would point the court to the fact that you cannot contract out of landlord-tenant status. I see leases all the time that include language that say things like, we can use self-help whenever we want. We can do all these things. It's not effective. It's void as a matter of public policy. It says that about ten times in the 504B section of Minnesota statutes. So that's what I would point you to. I'd also point you to Mr. Spindler-Craig's testimony during his deposition. It's at 115, 116, where he acknowledges that fact. I understand. People come to our offices, hotel situations, and ask us about these all the time. It's a fairly common occurrence in this area of the law. And we know that people can't contract out of their landlord-tenant rights. So I would say on the present possessory interest point, we cite a variety of cases that say when someone has an important property interest, a present possessory interest in property, even if it's disputed, even if, I think the Dix case says they have less than the proverbial bundle of sticks, they're still entitled to pre-deprivation due process. And those cases are about things like record players and stoves and snowblowers. And so if someone is entitled to pre-deprivation due process when it comes to those items, they are certainly entitled to it in a case like this where it's a matter of a person's home. And I will reserve the rest of my time for rebuttal. Thank you. Ms. Kendall? No? I'm sorry. When you're ready, Mr. Griffiths. May it please the Court. Judge, I'm Greg Griffiths. Judges, I'm Greg Griffiths representing Tom Kinnan in this case. And I just want to first explain how Ms. Kendall and I are going to split our time up today. The claims against Mr. Kinnan and Mr. Spindler-Cragg are quite similar. And so I'm going to be approaching my comments at the hotel guest versus tenancy issue, and then Ms. Kendall is going to be taking on the qualified immunity issue. And I recognize that there might be some overlap, but we're going to do the best we can not to duplicate the arguments. Now, one thing I want to take us back to is 2020 when the COVID-19 pandemic was going on. This is much more complex than just whether Mr. Davitt was a hotel guest versus a tenant. We have a COVID-19 pandemic going on. We have public officials in Olmstead County trying to figure out what they're going to do to try to prevent the spread of the COVID-19 pandemic. They have homeless people living in the Rochester Civic Center to try to control the spread. They recognize that they've got a class of vulnerable people, in this case the elderly, and we need to find someone for them to stay. They make arrangements for hotel rooms to find places for people to stay, homeless people. And among them is the Super 8 Hotel, and they give Mr. Davitt a place to stay. And then among the conditions that he had to follow were what you were just reading from, Judge Erickson. And before I get that, let me just remember the definition of a residential tenant. It includes the right of possession is transferred, and the lease agreement gives the tenant control of the property and the power to exclude others. If we look at that list that you were just reading off, the right wasn't transferred to him, and he did not have the right to exclude others. For example, he had to follow the rules of the hotel, no visitors to the room. He's required to cooperate with his case manager to search for alternative housing. If other housing becomes available, he's expected to take this, and his hotel stay will end. Not his tenancy, his hotel stay will end. The hotel stay will be assessed weekly and extended by no more than one week at a time. Olmstead County staff can come and check on the room at any time. Multiple times in that reference is hotel stay. So there's no ownership interest or property interest transferred to him like you would have in a tenancy. As compared to the definition of a hotel, a place where sleeping or housekeeping accommodations are supplied for transient occupancy, and transient occupancy is when it is the intention of the parties that the occupancy will be temporary. And we go back to our list again, and our list clearly shows that the occupancy here will be temporary. So what that tells us is Mr. Davitt is not a tenant. Mr. Davitt is a hotel guest. And when they found alternative housing for Mr. Davitt, and he didn't want to go there because he didn't want to contribute any money toward that, his rights as a hotel guest came to an end. And because he's a hotel guest, he's then a trespasser when he doesn't leave, and therefore he doesn't have the judicial proceedings to an unlawful detainer hearing like we call those here in Minnesota. So under that case, his Fourth Amendment rights aren't violated because there's no unlawful search and seizure. His Fourteenth Amendment rights aren't violated because, you know, he doesn't have that property interest, so he's not entitled to the unlawful detainer hearing. And so there's no underlying basis for the 1983 claim under those facts. Now, I told you I wasn't going to talk about qualified immunity, but I just want a couple sentences. This very conversation that we're having right now tells us that there was no clearly established right in the fact that these really smart, true, experienced lawyers, and Michael Spindler Craig and Tom Kinnan, did the best they could. And then you've got a bunch of really smart lawyers sitting in these tables, and none of us can find a case that can give clear guidance on this that tells us that this was not clearly established. And Ms. Tindall will be hammering on that a little bit more. But I also want to sort of make the point of who Tom Kinnan is here, because it also establishes how tenuous the connection is between anything Tom Kinnan did and Mr. Davitt being removed from the hotel room. So Tom Kinnan is an assistant county attorney for Olmstead County. He's been doing this a long time. He came in the same time I did. And his job is to give guidance to Olmstead County employees and Olmstead County departments. So he gets a phone call from the HRA, and you see in the emails, they're in the record, you know, what are we going to do? And Tom Kinnan testified, you know, I looked at the statute, and I looked at the definition of hotel and hotel guest and residential tenant, and he made a judgment call, and he passed it on to Mr. Franken from the HRA. He's a county employee. He can't give guidance to the police. He's not a city employee. He can't control the police. He can't direct the police. And so this allegation that's in the pleading that Mr. Kinnan somehow has authority to direct or control the actions of the police officers is just not supported by the evidence. And so the point I'm making is that anything he did is just so, you know, I think three, I think I argued in my brief that it's like three things removed from that doesn't establish a causal connection between anything Tom Kinnan did and the removal of Mr. Gabbitt from the apartment. But I think in the end, if we look at the agreement for hotel guests, we kind of come down to that it's really the language basically rebuts this presumption that the parties intended to anything, there's anything other than a transient occupancy here. And I recognize that he claims it's a sole occupancy and all his belongings are there, but if you look at all the criteria set forth in this, I think that this presumption has been rebutted that this was anything other than a hotel stay, particularly when the language of the document specifically references hotel stay, hotel stay, and hotel stay. What about on the causal connection sort of point? I mean, yeah, he didn't have direct control, but if they go, oh, yeah, we checked the lawyer. The lawyer told us this is okay, and it might be three steps down the line, but at that point it may cause them not to check with their own lawyer. It may, say, give them a level of comfort in evicting him. So that seems to me to be a little of a reach of an argument when you have a lawyer giving legal advice, even if there's no direct control. I would argue that when it's not their lawyer and they have their own lawyer and they did check with their own lawyer, I think that's when it's sufficiently removed. I see. So a position of Mr. Kanan is that the case was properly addressed by Judge Schultz, and we're asking that decision be affirmed. Thank you. Thank you. Ms. Tindall? You may. Thank you. May it please the Court. I'm Susan Tindall. I represent appellee Michael Spindler-Crage in this matter. As Attorney Griffith pointed out, we have split this, and I'll be focusing on the qualified immunity specifically, that there was no clearly — violation of a clearly established right.  I think it's important for us to be clear about that. Our position is we ask that this Court affirm the district court's finding that there was no violation of a clearly established right, that the attorneys, appellees Michael Spindler-Crage and Mr. Kanan are entitled to qualified immunity and dismissal of Mr. Griffith's claims. In order for a right to be clearly established at the time of the alleged violation, there needs to be circuit precedent that is sufficiently similar to the facts in order to provide the defendant's notice. In the absence of circuit precedent, there needs to be a robust consensus of cases of persuasive authority constituting settled law. We don't have that here, Your Honors. The question was — arised by Your Honor about what if reasonable minds could disagree. This Court, in the Glow v. Walls case, talked about that clearly established standard in the light of the pandemic, which was what was happening here. And unless reasonable officers — every reasonable officer would agree that there is a clearly established right. There's not. That's what clearly established means. We have to have something — a level of specificity to put these individuals on notice that their advice would violate a clearly established right. And we don't have that here. All the cases are based on broad generalizations or are distinct from the cases at hand. Nothing will put them on notice. Mr. DeWitt's counsel pointed out a few. Sobel v. Cook County, a case that's relied on. That case does not put anyone on notice that there could be a violation of constitutional right here. That case involved a mobile home park where there was clearly a landlord-tenant relationship, where the landlord asked a deputy to take the mobile home and move it. Here, there's no question that Mr. DeWitt, in signing the agreement, knew that this was not a permanent resident. The agreement says that. He's supposed to be looking for permanent housing. Other cases pointed out they either talk about rent or, as in the Stone v. Glow case, they talk about security deposits, rent, utilities, none of which is an issue here. We have attorneys who, as Mr. Griffiths pointed out, are well-seasoned. Attorneys spent 15 years answering calls on landlord-tenant issues. He knew the law, Mr. Cameron also, as an established attorney at the county. Dealt with these issues. They looked at their knowledge of the law. They looked at what was provided to them in the contract, specifically that the agreement was week-to-week. Didn't allow visitors. Can't have visitors in your hotel room. You can ask to be leaved at any time. And the county staff can come into your room and check the room. Mr. DeWitt agreed to this. This is what the attorneys were reviewing and making the determination to advise that Mr. DeWitt had no legal basis to remain at the hotel. There is nothing to put these attorneys on notice that what they were doing in indicating to the officers that Mr. DeWitt had no legal basis was a clear violation of established right. Because there was no authority to put these on notice, the district court correctly found that these attorneys are entitled to qualified immunity. Just briefly, the causation argument. There is no causal link between the attorneys here and the actions. When we look at the case that was pointed out by Attorney Hawkins, the Z.J. Jones v. Kansas City Board case, a case of this circuit, there has to be a causal link, and there isn't here. We have attorneys who were, based on their review of the law, told the officers that they didn't have a legal right. Attorneys told the kids didn't tell the officers what to do. They just said he didn't have a legal right to be there. Didn't direct the officers to arrest him. Just simply said he didn't have a legal right to be there. But they knew what they were going to do, though, didn't they? I mean, I don't think you can realistically argue that they were just asking for that advice out of idle curiosity. No. The advice to know whether he could be removed from the hotel room. Correct, Your Honor. They knew once they said that, the officers were going to go and do what the hotel owner wanted them to do, right? These attorneys did not know what would happen with the officers in removing them. When I say that, I mean an attorney's advice about someone not having a legal right at the hotel, what the officers' actions are, they cannot be responsible for. See, there could have been force used by the officers in effectuating the removal of Mr. DeVette. Now, there is no argument that there is, but there was. Attorneys Spindler, Crage, and Cannon could not be responsible for that. There's no direct link to that. And in that Kansas City case, this Court pointed out that one detective could not be liable for the conduct of other SWAT officers. There has to be some type of direct conduct. And here, there was no direction from these attorneys of how to carry out Mr. DeVette being removed from that hotel. For the reasons that we have discussed here today and in our briefs, we ask that this Court affirm the district court's dismissal and find that these appellees are entitled to qualified immunity. Thank you. Thank you. Thank you. Mr. Hogan. Your Honors, just a few brief rebuttal points. Causation is almost always a fact issue, and that's why the district court didn't rely on it in this case. And the causation here is very proximate.  When police are confronted with a situation like this, they almost always consult their county or city attorney. You see that in the case law in this case, Soldal and the Gilliam case. The Court talks about that happening in those cases. Now, next, there is case law in this case providing reasonable notice. We have the Soldal case on the Fourth Amendment, and we have the Pawlowski case that specifically says that due process violations occur when an unlawful eviction is effectuated by a government agent. And we have a variety of other cases. In fact, we have the Bridgeforth case cited from the District of Columbia. It's not a circuit precedent, but it applies circuit precedents. And in that case, we have a public housing tenant who moved into the wrong apartment intentionally, and then the police removed him. And the court said, look, it's a home. It's a strong enough property interest. They shouldn't have broken and arrested him. They should have just gone through the eviction hearing process, which takes a couple weeks. Now, in a public housing situation, Mr. Davitt is just like any other public housing tenant. The exclusion of others in this analysis is a very weak factor. Inspections are allowed in any tenancy, and in public housing, they're allowed all the time. So just saying you can't exclude others is not enough. And finally, I would say Mr. Davitt had an even greater possessory interest in this property than usual because of the pandemic and because of the eviction ban, because he was an elderly homeless man whose only choice after he was removed was being put back into a dangerous congregate setting. And with that, I will ask the court to reverse the district court and remand for further proceedings. Thank you.